# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LINDA L. GIBSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 09-2423-JWL** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error as alleged by Plaintiff in the administrative law judge's (ALJ's) evaluation of the opinions of Dr. Eddy, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.**     **Background**

Plaintiff applied for DIB and SSI on April 24, 2006 alleging disability beginning April 27, 2006. (R. 9, 114-24).[1] The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 9, 71-74, 91-92). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ William G. Horne on January 27, 2009. (R. 9, 17). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 9, 17-70). ALJ Horne issued a decision on February 20, 2009 in which he found that Plaintiff has the residual functional capacity (RFC) for a range of sedentary work; and that although Plaintiff is unable to perform her past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 9-16). He determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications. (R. 16). Plaintiff requested, but the Appeals Council denied, review of the ALJ's decision. (R. 1-5). Therefore, the ALJ's decision is the final decision of the Commissioner and Plaintiff now seeks judicial review of that decision. (R. 5); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).

## II.     Legal Standard

---

[1]The administrative record in this case is not as clear regarding Plaintiff's applications as the decision suggests, and the ALJ did not explain why he reached this conclusion. The record contains an application for DIB dated May 4, 2006, in which Plaintiff alleged disability beginning March 1, 2006. (R. 114-18). On May 16, 2006, Plaintiff amended her DIB application, alleging disability began April 27, 2006. (R. 119-20). On August 7, 2006, Plaintiff submitted an application for SSI in which she alleged disability beginning on April 24, 2006. (R. 121-24). These facts may be clarified by the Commissioner, if necessary, on remand.

2

The court's jurisdiction and review are guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)); see also, 42 U.S.C. § 1383(c)(3) (final decision in an SSI case "shall be subject to judicial review as provided in section 405(g) of this title"). Section 405(g) of the Act provides that, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful

activity and is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Id. (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed

impairment, the Commissioner assesses RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred: in his credibility finding; in evaluating the weight accorded to the opinion of Plaintiff's physician, Dr. Eddy; in failing to consider the combined effects of all of Plaintiff's impairments; and, as a consequence of the other alleged errors, in relying upon the vocational expert's testimony at the hearing. The Commissioner counters that there was no error in the credibility finding; that the ALJ properly evaluated the medical opinions; and that the ALJ properly considered the entire record. He argues that because the ALJ did not err in these aspects of the decision, he properly relied upon the vocational expert's testimony in response to the hypothetical question. The court finds remand is necessary because the ALJ erred in evaluating Dr.

Eddy's opinions, and it does not evaluate Plaintiff's remaining allegations of error. Plaintiff may make those arguments to the Commissioner on remand.

## III. Discussion

Plaintiff argues that Dr. Eddy provided a medical source statement regarding Plaintiff's limitations and functional capacity on two occasions, April 28, 2008 and January 9, 2009. (Pl. Br. 26) (citing R. 362-66). Plaintiff acknowledges that in his decision the ALJ addressed the second statement as that of "Dr. Ehly," but she points out that at the hearing her counsel explained that "Dr. Ehly" was a typographical error, and that both statements were completed by the same person, Dr. Eddy. Id. (citing R. 67-68). Plaintiff's argument then assumes that the ALJ was aware when writing his decision that Dr. Eddy and "Dr. Ehly" were the same person. She argues that the ALJ "affirmed" Dr. Eddy's broad conclusion (that Plaintiff cannot perform work at more than a sedentary exertional level) presented in the first medical source statement, but that he accorded no weight to Dr. Eddy's conclusion in the second medical source statement (that Plaintiff's condition had deteriorated, and that she now has greater physical limitations). Id. 26-27 (citing R. 13, 616-20). She claims it was error for the ALJ to accept Dr. Eddy's first statement but reject the second statement without fully explaining his reasons, and that substantial evidence does not support his determination. Id. at 27.

The Commissioner also acknowledges that the ALJ addressed the statements as the opinions of Dr. Eddy, and "Dr. Ehly," respectively; but argues that "substantial evidence nonetheless supports the ALJ's evaluation of the [second] opinion." (Comm'r Br. 10).

First, the Commissioner argues that the ALJ gave some weight to the first statement, but found that the severity of the limitations contained therein was not supported by the record. Id. Next, he argues that the record evidence supports the ALJ's reasons for discounting the second opinion–that "Dr. Ehly" relied exclusively on Plaintiff's subjective complaints in forming his opinion; and that such severe restrictions would mean Plaintiff was essentially bedridden and unable to function, an understanding which is contrary to the objective record. Id. Finally, the Commissioner argues, "it is also significant to note that the ALJ did not consider Dr. Eddy to be a treating physician under the regulations." Id. at 11.

The court finds three errors in the ALJ's evaluation of the medical opinions, any one of which would require remand for a proper evaluation. First, the decision does not permit the court to determine if the ALJ decided Dr. Eddy and "Dr. Ehly" are the same person or if he decided they are different persons, and the ALJ did not explain and support either determination with record evidence. Second, the decision does not permit the court to determine whether or not the ALJ assessed the medical source statements as treating source opinions, and the basis for making either determination. Finally, the ALJ did not properly support his findings that the opinions were "based predominantly" or "almost exclusively" "on the claimant's subjective complaints." (R. 13).

> The ALJ summarized, discussed, and weighed the two statements at issue:
>
> Although actual physical testing showed the claimant to be functioning relatively well in 2008, an assessment completed by Clark Eddy, D.O., in April 2008 provided a somewhat different picture of the claimant's overall

functioning. Dr. Eddy had initially treated the claimant in early 2008 and he opined, unlike other doctors, that the claimant's physical problems were taking a significant toll on the claimant's overall functioning. Dr. Eddy considered the claimant's hip condition to be very restrictive and indicated claimant was struggling with uncontrolled diabetes. Overall, Dr. Eddy limited the claimant to lifting and carrying no more than 10 pounds and assessed the claimant with significant limitations in her ability to stand, walk, and sit. He also assessed the claimant with environment limitations, including the need to avoid airborne irritants, like dust, fumes, odors, and smoke. (Ex. 10F) In contrast to other assessments, however, Dr. Eddy's evaluation appeared to be based predominately on the claimant's subjective complaints as compared to objective findings. Moreover, Dr. Eddy provided little rationale or clinical findings to support some of his conclusions. Considering the totality of the evidence, the undersigned finds Dr. Eddy's assessment of the claimant to be too restrictive in specific areas of functioning and not fully supported by objective medical record. As noted above, Dr. Eddy relied too heavily upon the claimant's subjective complaints in making his evaluation. Despite these weaknesses in his approach, the doctor's broader conclusions that the claimant was physically limited and could not be expected to perform work at more than a sedentary exertional level is supported by the medical record and affirmed by the undersigned.

Although giving some weight to the assessment of Dr. Eddy, the claimant gives essentially no weight to the findings of C. Ehly, D.O. Dr. Ehly completed an assessment of the claimant in January 2009 and he relied, even more than Dr. Eddy, almost exclusively on the claimant's subjective complaints in assessing her functioning. Overall, Dr. Ehly opined the claimant's physical problems were completely debilitating. The claimant was precluded from lifting even 10 pounds occasionally and she was precluded from standing, walking, or sitting for any length of time. Such restrictions simply are not supported by the objective medical record and Dr. Ehly offers no objective support or rationale for his conclusions. Moreover, the objective medical record does not support finding the claimant to be precluded from all sitting, standing, and walking. Such severe restrictions would mean the claimant is essentially bedridden and unable to function, which is not indicated in the record. Considering all these factors, Dr. Ehly's assessment is given essentially no weight and it is not found persuasive in this case. (Ex. 24F)

(R. 12-13).

8

### A. The Same or Different Persons

The ALJ chose to address the two medical source statements consecutively in his decision, which might suggest that he found them to be produced by the same person, and was trying to contrast the doctor's opinions over time. However, it might suggest with equal plausibility that the ALJ was seeking to compare the opinions of two separate doctors completed within one year of each other. Further, the transition sentence between the two paragraphs ("Although giving some weight to the assessment of Dr. Eddy, the claimant [sic (presumably, "the undersigned")] gives essentially no weight to the findings of C. Ehly, D.O.") suggests that the ALJ found the medical source statements to have been completed by different persons. He uses the word "although" tending to emphasize the differences between the statements and the doctors. He indicates he gave "some weight" to one opinion and "essentially no weight" to the other. He uses the different names, and does not explain that one is merely a typographical error. Finally, he does not explain why he gave greater weight to the earlier opinion than to the more recent opinion, although an explanation would be expected if the opinions were from the same doctor.

The court has also considered the record evidence regarding the two opinions. Each medical source statement was forwarded to the ALJ under a cover letter from Plaintiff's counsel which identifies Dr. Eddy, and "Dr. Ehly," respectively. (R. 361, 615). Although each cover letter is signed by a different attorney, each letter is on the letterhead of the same law firm, contains an identical facsimile caption at the top of the page, and the signing attorney is listed on the letterhead along with the non-signing attorney as the

9

two members of that law firm. Id. The handwriting on each doctors' statement is similar. (R. 362-66, 616-20). The doctor's signature on each statement is similar but not identical, and although the printed name of the doctor on the first statement is clearly "Clark Eddy," the printed name on the second statement is by no means clear, and might even be read to say, "Charles Ehly." The record contains treatment notes from Dr. Eddy spanning most of the period between the two statements, but contains no treatment notes identifying "Dr. Ehly." (R. 500-65) (dated March 17, 2008 through October 28, 2008). Finally, as Plaintiff points out in her brief, her counsel informed the ALJ at the hearing that the two medical source statements are from the same doctor. (R. 66-68) (R. 67: "I know it has a different doctor's name, [ ] but it's the same doctor. It's just misspelled.").

The court may not weigh the evidence in the first instance and decide whether the two statements were prepared by the same doctor. That is the ALJ's responsibility. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172. Yet, the ALJ did not do so. This determination is essential to a proper weighing of the opinions, because if the statements were prepared by the same doctor, that determination tends to emphasize the opinion of the doctor over time, and when the opinions are considered in conjunction, there may be a basis to accord greater weight to one or both opinions. Nonetheless, in any case the ALJ must explain why the opinions were accorded different weight. This error requires remand for a proper finding and explanation of the weight given each opinion.

### B. **Treating Source Opinion**

A treating source physician is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). In some circumstances, a treating source opinion may be worthy of "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, Social Security Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2010) ("Giving Controlling Weight to Treating Source Medical Opinions"). Even if the treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1300. After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion, and "if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. at 1301 (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

As the Commissioner argues in his brief, the ALJ did not state that he had considered Dr. Eddy, or "Dr. Ehly" to be a treating physician. (Comm'r Br. 11). Moreover, he did not state he considered them not to be treating physicians. Yet, as discussed above, the record reveals Dr. Eddy treated Plaintiff from March 17, 2008 through at least October 28, 2008. (R. 500-65). As the Commissioner points out, "Generally, a physician will be considered a treating source if the physician has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of

the claimant's impairment.'" (Comm'r Br. 11) (quoting Doyal, 331 F.3d at 763). While Dr. Eddy's treatment apparently did not encompass a period of years, it encompassed at least seven months and reflects more than a single examination of Plaintiff. Therefore, the treatment period must be given consideration in deciding the weight to be accorded the doctor's opinion. Because the ALJ admittedly did not do so, remand is necessary for a proper consideration of Dr. Eddy's status as a treating physician.

### C. Medical Opinions Based on Subjective Complaints

Plaintiff argued that the only reason given by the ALJ for according the second medical source statement no weight was because "Dr. Ehly" relied "almost exclusively on Gibson's subjective complaints in assessing her functioning." (Pl. Br. 27). She argued that this explanation is not supported by substantial evidence. Id. The Commissioner pointed out that although the ALJ accorded "some weight" to the first medical source statement, he discounted the statement in part because "Dr. Eddy's opinion appeared to be based on Plaintiff's subjective complaints." (Comm'r Br. 9). He then pointed out that the ALJ gave the second medical source statement "no weight" in part because "the doctor relied exclusively on Plaintiff's subjective complaints." Id. at 10. As the parties argue, the ALJ accorded "some weight" to the first medical source statement and "no weight" to the second, but he discounted both medical source statements to some extent. (R. 12-13). Specifically, the ALJ stated, "Dr. Eddy's evaluation appeared to be base predominately on the claimant's subjective complaints as compared to objective

12

findings," and "Dr. Ehly" "relied, even more than Dr. Eddy, almost exclusively on the claimant's subjective complaints in assessing her functioning." Id. at 13.

The Tenth Circuit has expressed reservations about an ALJ discounting a treating physician's opinion because it was based upon the patient's subjective complaints. The court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002) (citing Frey, 816 F.2d at 515). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports." Id., 288 F.3d at 1252. Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004). An ALJ may properly reach such a conclusion only if it is based upon evidence taken from the physician's records. Victory v. Barnhart, No. 03-7129, 2005 WL 273302 at *2-3, 121 Fed. Appx. 819, 823-24 (10th Cir. 2005)(unpublished).

The court finds no support in the record for the ALJ's conclusion. Nothing in either medical source statement indicates that the physician based his opinion merely on the patient's subjective complaints. The record indicates that Plaintiff saw Dr. Eddy on four occasions before Dr. Eddy completed the first statement. Dr. Eddy's report might well have been based on his observation and examination of Plaintiff at those times. (R. 547-65). Remand is necessary for the ALJ to properly evaluate the medical opinions.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for proceedings consistent with this opinion.

Dated this 12th day of January 2011, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**